UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY JOHNSON,
    Plaintiff,
v.                                             Case No. 3:07CV128(WWE)

DETECTIVE REBECCA LEGER, et al.,
    Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Anthony Johnson, commenced this civil rights action *pro se* and *in forma pauperis*. Plaintiff sues Detective Rebecca Leger, Sergeant Michael Driscoll and Officer Christopher Obey for falsely arresting him in 2005 on robbery charges involving three separate robberies that occurred in Bloomfield, Connecticut. Defendants move for summary judgment on the ground that plaintiff fails to state a claim for false arrest. For the reasons that follow, the motion for summary judgment will be granted.

**I.**     **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

A court must grant summary judgment if the pleadings, discovery materials on file and any affidavits show that there is no genuine issue as to any material fact. See Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material

fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture.  See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See  Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  See Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     **Facts**

On January 23, 2005, a robbery occurred at the CVS Pharmacy located at 341 Cottage Grove Road in Bloomfield, Connecticut. That same day, Bloomfield Police Detective Ellen traveled to the CVS Pharmacy to investigate the robbery. Detective White viewed pictures captured by the closed circuit surveillance system in the store. Those pictures revealed that the suspect wore either a black or dark blue jacket with a red stripe on both forearms and a white stripe along the inseam of the jacket. The cashier gave a statement to Detective White indicating that the suspect was a dark-skinned male, between five feet ten inches and six foot one inch tall and wore a black jacket with fur around the collar, black pants, a black stocking cap and sunglasses. The cashier informed Detective White that he would be able to identify the suspect if he saw him again.

On February 2, 2005, Detective White showed the cashier a photographic array. The cashier was unable to identify any of the individuals as the suspect in the CVS robbery because the suspect's facial features were difficult to see due to the fact that the suspect had been wearing sunglasses and a hat at the time of the robbery.

On January 30, 2005, $385.00 was stolen from a Subway Restaurant located at 816 Park Avenue in Bloomfield, Connecticut. That same day, Bloomfield Police Officer Christopher Obey traveled to the restaurant to investigate the robbery.

The cashier, Bryant J. Bailey, was a witness and gave a sworn statement to Officer Obey at the Bloomfield Police Department. The statement was typed up and signed by Mr. Bailey in the presence of Officer Obey. Mr. Bailey described the suspect as dark skinned, unshaven, six feet tall, medium build, about forty years of age and

wearing tight blue jeans, a dark green jacket with yellow fur down the sleeves, tan work boots and a black/gray cap with a brim.

Detective Leger showed Bryant Bailey a photographic array, but he was unable to identify any of the individuals as the suspect in the Bloomfield Subway robbery. Detective Leger explained to Mr. Bailey that it was important to clear innocent individuals and asked him to look at a larger photograph of one of the individuals in the original array. Mr. Bailey immediately identified the individual in the photograph, who was the plaintiff, as the person who had robbed him at the Bloomfield Subway Restaurant on January 30, 2005.

On February 2, 2005, at approximately 6:22 a.m., a robbery occurred at a Bloomfield Citgo station located at 925 Blue Hills Avenue in Bloomfield, Connecticut. That same day, Bloomfield Police Officer Sean Cecchini traveled to the Citgo Station to investigate the robbery.

The cashier was a witness and gave a sworn statement to another officer. The cashier described the suspect as a black male, five feet nine inches in height, weighing about 170 pounds and wearing a black or dark jacket, a dark ski mask and a baseball cap with a New Orleans Saints logo on the back. The cashier stated that the suspect tried to force open the window with his hands, threatened to shoot if he did not hand over a pack of Newport Cigarettes and then tried to break the glass window above the cash slot with a pair of silver vice grips. The suspect fled the scene after the cashier pressed the alarm button. Officer Cecchini viewed and seized a video surveillance tape of the incident.

On February 18, 2005, Sergeant Driscoll and Detective Leger met with another witness who had been at the Citgo Station on February 2, 2005, at the same time as the robbery.  In a sworn written statement, the witness related that she was in the Citgo station store buying a newspaper when she observed a black male, five foot nine inches tall, weighing about 180 pounds, dressed in black and wearing a black ski mask, enter the store.  After she had left the store and returned to her vehicle, she noticed the same man exit the store and walk quickly towards a car.  He waited for her to leave before exiting the parking lot.  She described the man's vehicle as a cranberry red, older model, four door, mid-size sedan that reminded her of a Buick.  She thought that he was probably in his late twenties based on his behavior.  Because the witness stated that she had never seen the man's face, Detective Leger and Sergeant Driscoll did not show the witness a photographic line-up.

At approximately 11:00 a.m. on February 2, 2005, the East Hartford Police Department advised Sergeant Driscoll of the Bloomfield Police Department, that a suspect in a robbery that had occurred at a Cumberland Farms in East Hartford was in custody in Hartford.  Detective Leger learned from an East Hartford Police Officer that the suspect was plaintiff, Anthony Johnson, that Johnson's vehicle had been seized at the time of his arrest and that a jacket matching the description of the jacket worn by the suspect in the Bloomfield CVS robbery was seen in the back seat of the plaintiff's vehicle.

Detective Leger and Sergeant Driscoll traveled to the Hartford Police Station on Enfield Street to view plaintiff's vehicle.  Detective Leger saw a jacket in the back seat of plaintiff's vehicle that she recognized from the photographs from the surveillance

5

video at the Bloomfield CVS. Detective Leger and Sergeant Driscoll seized the vehicle and had it towed to the Bloomfield Police Department. An inventory of the vehicle revealed the jacket, a pair of vice grips that matched the description of those used in the Bloomfield Citgo robbery and a screwdriver that matched the description of that used in the Bloomfield Subway robber. Detective Leger seized these items from the vehicle on February 5, 2005, pursuant to a search and seizure warrant signed by Judge Mulcahey on February 4, 2005.

On March 15, 2005, Judge Susco signed a warrant for plaintiff's arrest for the robbery of the Bloomfield Citgo station. A Bloomfield Police Officer served the arrest warrant on the plaintiff on March 24, 2005 at the criminal courthouse located at 101 Lafayette Street in Hartford, Connecticut. The criminal case filed against plaintiff pursuant to this arrest, State v. Johnson, CR05-589076, was dismissed on March 31, 2006.

On August 4, 2005, Judge Rittenband signed a warrant for plaintiff's arrest for the robbery of the Bloomfield Subway restaurant. A Bloomfield Police Officer served the arrest warrant on the plaintiff on August 10, 2005 at the criminal courthouse located at 101 Lafayette Street in Hartford, Connecticut. The criminal case filed against plaintiff pursuant to this arrest, State v. Johnson, CR05-593022, was dismissed on March 31, 2006.

On August 4, 2005, Judge Rittenband signed a warrant for plaintiff's arrest for the robbery of the Bloomfield CVS store. A Bloomfield Police Officer served the arrest warrant on the plaintiff on August 10, 2005 at the criminal courthouse located at 101

Lafayette Street, Hartford, Connecticut.[1]  The criminal case filed against plaintiff pursuant to this arrest, State v. Johnson, CR05-593023, was dismissed on March 31, 2006.

### III.     Discussion

Plaintiff claims that Detectives Leger and Sergeant Driscoll included false statements in the affidavit in support of the warrant for plaintiff's arrest for the CVS robbery, (2) Detective Leger showed the victim in the Subway Robbery a suggestive photographic array, (3) Officer Obey signed a witness statement relating to the Subway Robbery and (4) Detective Leger omitted pertinent information from a witness statement from the affidavit in support of the warrant for plaintiff's arrest in the Citgo robbery.

---

[1]  In opposition to the motion for summary judgment, plaintiff attempts to raise a new claim regarding the viability of the arrest warrants which are the subject of this lawsuit.  Plaintiff contends that in April 2008, in response to his request seeking information about the three Bloomfield robbery cases that had been dismissed, the State of Connecticut Records Center sent him a letter stating that it had no record of the cases in its public files and that it required a notarized copy of a government issued photo identification card.  Based on this response, plaintiff now claims that none of the three arrest warrants were signed by a judge and were completely fabricated by the defendants.  First, Plaintiff cannot amend his complaint in a motion or memorandum. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), cert. denied, 525 U.S. 1104 (1999).  Second, plaintiff attached copies of the signed arrest warrants to a complaint filed in this court on July 27, 2007 in Johnson v. Morelli, Case No. 3:97cv1148 (AVC).  Thus, plaintiff was well aware of the existence of the signed warrants at least as early as July 23, 2007, the day he signed the complaint in Johnson v. Morelli.  Third, the state statute governing the erasure of criminal records explains the response that plaintiff received from the State of Connecticut Records Center.  Connecticut General Statutes § 54-142a(e) prohibits the Records Center from disclosing to the subject of the erased record, any information pertaining to that erased record unless the subject provides satisfactory proof of his or her identity.   Thus, the letter from the Records Center is not evidence that the arrest warrants did not exist, were unsigned or were fabricated.

### A. CVS Robbery

Plaintiff asserts that Detective Leger and Sergeant Driscoll lacked probable cause to arrest him for the Bloomfield CVS Pharmacy robbery because the affidavit in support of the arrest warrant included false statements. The federal court looks to state law when considering federal civil rights claims for false arrest and false imprisonment. See Huang v. Johnson, 251 F.3d 65, 75 (2d Cir. 2001). Under Connecticut law, these claims are synonymous; "'[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another.'" Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir.) (quoting Outlaw v. City of Meriden, 43 Conn. App. 387, 392, 682 A.2d 1112, 1115 (1996), cert. denied, 128 S. Ct. 109 (2007)).

"It is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest." Johnson v. Ford, 496 F. Supp. 2d 209, 213 (D. Conn. 2007). Probable cause only exists when police officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is presumed when the arrest is made pursuant to a warrant issued by a neutral magistrate. See Walczyk v. Rio, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."). A plaintiff can overcome this presumption by demonstrating that his right not to be arrested without probable cause was violated when "the officer . . .'knowingly and intentionally, or with reckless disregard for the truth, made a false

8

statement ...' or omitted material information," and where "such false or omitted information was 'necessary to the finding of probable cause.' " Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

Plaintiff claims that in her affidavit, Detective Leger falsely stated that the jacket found in plaintiff's vehicle after his arrest on February 2, 2005, by East Hartford Police officer for another robbery, was identical to the jacket described by the cashier as having been worn by the suspect in the robbery of the Bloomfield CVS Pharmacy. The arrest warrant affidavit does not support this allegation.

Detective Leger's Affidavit includes the following statements: the CVS Pharmacy cashier described the suspect as having worn a black jacket with fur around the collar, an officer who viewed the surveillance video of the incident noted that the jacket was dark with red stripes on both sleeves, Sergeant Driscoll and Detective Leger viewed a jacket in the back seat of plaintiff's vehicle that was identical to the jacket worn by the suspect in the CVS robbery as recorded on the surveillance video of the incident and an inventory of the contents of plaintiff's vehicle by Detective Leger revealed a blue jacket with red stripes around both sleeves and white patches under the sleeves. Thus, Detective Leger did not state that the jacket viewed by herself and Sergeant Driscoll was identical to the jacket described by the CVS Pharmacy cashier, but was identical to the jacket worn by the suspect as depicted by the surveillance video.

Plaintiff also claims that the statement in the affidavit pertaining to the cashier's inability to identify plaintiff from the a photographic line-up was a lie because the cashier had given a statement to the officer investigating the robbery that he would be able to identify the suspect if he saw him again. Plaintiff provides no evidence to

support this claim. The fact that the cashier may have initially thought that he would be able to identify the suspect if he saw him again does not make the cashier's later admission that he could not pick the suspect out of a photographic line-up, because the suspect's face had been hidden by a mask and sunglasses, a false statement. Accordingly, plaintiff has failed to make a "substantial preliminary showing" that the Detective Leger in her affidavit, "knowingly and intentionally, or with reckless disregard for the truth," made false statements which were "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978). The motion for summary judgment will be granted as to the claims of false arrest regarding the CVS Pharmacy robbery.

    **B.**    **Citgo Robbery**

On February 18, 2005, Detective Leger and Sergeant Driscoll interviewed a witness who had been at the Citgo station just before the robbery. The witness stated that on the morning of the robbery she observed a black male, dressed in black and wearing a black ski mask in the Citgo station store. After she bought a newspaper and returned to her car, she observed the same man leave the store and get into a cranberry, four-door, mid-size sedan that reminded her of a Buick. She thought that the man was probably in his late twenties based on his behavior, but stated that she would not be able to identify the man because she never saw his face.

Detective Leger's affidavit in support of plaintiff's arrest for the Citgo station robbery included the statement of the witness regarding her observation of the man's vehicle and the her admission that she would not be able to identify the man because she had not seen his face. Plaintiff asserts that Detective Leger and Sergeant Driscoll

neglected to mention that the witness had stated that she thought the black male who was in the Citgo station store was in his late twenties.

The court construes these statements as a claim that Detective Leger should not have omitted from her affidavit the statement by the witness about the age of the man who was in the Citgo station at the time of the robbery. Because plaintiff's arrest was made pursuant to an arrest warrant issued by a neutral state judge, plaintiff must demonstrate both that Leger intentionally or recklessly omitted material information in the warrant application and that the information was necessary to a finding of probable cause. See Soares, 8 F.3d at 920.

Even if Detective Leger intentionally or recklessly omitted the statement by the witness that the black male was probably in his late twenties based on his behavior, the claim fails because that statement was not necessary to a finding of probable cause. See Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999). The court assesses the materiality of alleged misstatements in a warrant application by "put[ting] aside allegedly false material, supply[ing] any omitted information, and then determin[ing] whether the contents of the 'corrected affidavit' would have supported a finding of probable cause." Martinez v. City of Schenectady, 115 F.3d 111, 115 (2d Cir. 1997). If the corrected affidavit would be sufficient to support probable cause as a matter of law, no constitutional right was violated and the defendant officer is entitled to summary judgment. See id.; see also Smith, 175 F.3d at 105.

The corrected affidavit would include the statement of the witness that the suspect was a black male, dressed in black, wearing a dark ski mask who drove a cranberry four-door sedan and that she never saw his face, but she believed that he

11

was in his late twenties based on the way he behaved.  In addition to this statement, the affidavit would include the statement of the victim of the robbery that the suspect was a black male, wearing a black or dark jacket, a black ski mask and a baseball cap with a New Orleans Saints logo on the back and who used a pair of silver vice grips to access the cash drawer through a glass divider and threatened to shoot him if he did not hand over a pack of Newport cigarettes.  The affidavit would also include a statement that at the time of his arrest on February 2, 2005, for a similar robbery of a Cumberland Farms Store in East Hartford, the plaintiff was forty-five years old, wearing a cap with the New Orleans Saints logo on the back of it and that officers found a pair of vice grips, a black knit cap and a black ski mask in his vehicle, a maroon, four door Nissan Altima.

All of these facts, considered together, would have left a judge with ample support for the conclusion that there was a reasonable probability of criminal conduct by the plaintiff.  The corrected affidavit would be sufficient as a matter of law to support probable cause.   Accordingly, the motion for summary judgment will be granted as to the false arrest claim regarding the Bloomfield Citgo station robbery.

    C.    **Subway Robbery**

Plaintiff alleges that Officer Obey tampered with the voluntary witness statement of Subway Restaurant Cashier Bryant Bailey and forged Bailey's signature on the statement.  Plaintiff notes that Officer Obey's Incident Report does not state that Bailey's written statement was type written.  Plaintiff also claims that Detective Leger showed Mr. Bailey a suggestive photographic array that led to his false arrest for the robbery of the Subway Restaurant.

### 1. Officer Obey

The defendants have produced a copy of Officer Obey's Incident Report regarding the January 30, 2005 Robbery of the Bloomfield Subway Restaurant and the Voluntary Statement of Bryant Bailey of the same date. Mr. Bailey states in his affidavit that he gave a voluntary written statement to Officer Christopher Obey, the voluntary statement is attached to his affidavit and that the signature on the voluntary statement is his own. Obey states in his affidavit that he obtained a voluntary statement from Bryant Bailey and that the statement was typed and then signed by Mr. Bailey in his presence. Plaintiff provides no support for his contrary assertion that Officer Obey signed the voluntary statement for Bryant Bailey.

Plaintiff also contends that Officer Obey must have tampered with the sworn statement of Mr. Bailey because the statement does not mirror the information included in Officer Obey's Incident Report. The fact that the voluntary statement does not include every piece of information Mr. Bailey may have verbally conveyed to Officer Obey following the robbery, does not make the voluntary statement false or demonstrate that Officer Obey tampered with it.[2] Accordingly, the plaintiff has failed to state a claim upon which relief may granted against Officer Obey. The motion for summary judgment will be granted as to the claims against him.

---

[2] Plaintiff also contends that Officer Obey listed his badge number as 152 instead of 132 on Bailey's Voluntary Statement. Although that the badge number as written by Officer Obey may look like 152 instead of 132, a comparison of Officer Obey's signature on the statement shows that it mirrors his signature on both pages of the Incident Report as well as his Affidavit filed in support of the motion for summary judgment. In addition, Obey has averred that he Bailey signed the statement in his presence. The plaintiff has provided no evidence to suggest that the signature on the Voluntary Statement is not Officer Obey's.

### 2. Detective Leger

Plaintiff asserts that Detective Leger falsely stated in the arrest warrant affidavit that she had shown a larger photograph of one of the individuals in the initial photo array to Mr. Bailey and that Mr. Bailey immediately identified that individual as the suspect in the Subway Restaurant robbery.  Plaintiff makes this assertion because the Bloomfield Police Department claimed to have lost the photograph and never produced it to him or the court.  Mr. Bailey, however, has filed an affidavit stating that Detective Leger showed him a larger photograph of one of the individuals in the photo array and that he identified that individual as the person who robbed him in the Subway Restaurant. Detective Leger has also filed an affidavit in which she states that she showed Mr. Bailey a larger photograph of one of the individuals in the initial photographic array and the plaintiff identified that individual as the man who committed the Subway robbery.  The plaintiff has provided no evidence to contradict these affidavits.

The plaintiff argues further that any procedure involving Detective Leger showing a larger photograph of him to Mr. Bailey would be suggestive and any identification of him pursuant to this procedure would be unreliable and could not constitute probable cause for his arrest.  The defendants argue that this claim of false arrest fails because the plaintiff was already in custody at the time of his arrest.

As stated above, Connecticut law defines false arrest or false imprisonment as "the unlawful restraint by one person of the physical liberty of another." Russo, 479 F.3d at 204.   Thus, plaintiff "must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will" to prevail on a false arrest

14

claim.  Berry v. Loiseau, 223 Conn. 786, 820 (1992) (internal quotation marks omitted).  A plaintiff does not state a claim for either false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody or incarcerated on other charges, because there is no deprivation of his or her liberty interests.  See Holmes v. Grant, No. 03 Civ. 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. Mar. 31, 2006) ("[a]n inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses"); Goncalves v. Reynolds, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (noting that plaintiff could not state a claim for false arrest because, at the time of his arrest, he was already detained pursuant to earlier charges and based upon his prior convictions).

Here, the plaintiff's arrest pertaining to the robbery of the Subway Restaurant occurred on August 10, 2005.  At the time, however, he was already incarcerated pursuant to a conviction and thirty month sentence imposed upon him on May 24, 2005.  See http://jud2.ct.gov/crdockets; State v. Anthony Johnson, Docket No. H12M-CR05-0197551-S (May 24, 2005).  Plaintiff asserts that the charges against him pertaining to the robbery of the Subway Restaurant were dismissed on March 31, 2006.  (See Compl. at 4; Defs.'s Mem. Support Mot. Summ. J., Ex. P.)  Department of Correction records reflect that plaintiff remained incarcerated in a State of Connecticut Department of Correction facility until August 3, 2007, when he was discharged to the Bureau of Prisons.  Because the plaintiff was already incarcerated at the time of his arrest for the robbery of the Subway Restaurant and remained in custody until and after the charges were dismissed in March 2006, the plaintiff's liberty was not restrained by the

15

defendants and his false arrest claim fails.  The motion for summary judgment will be granted as to this claim.

## Conclusion

The Motion for Summary Judgment [**doc. # 38**] is **GRANTED**.   The Clerk is directed to enter judgment for the defendants and close this case.

**SO ORDERED** this ____31st_____ day of March 2009, at Bridgeport, Connecticut.

                                             _____/s/_____
                                             Warren W. Eginton
                                             Senior United States District Judge